UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THELESTER MAHONE,

        Plaintiff,

v.                                        Case Number 09-13621
                                           Honorable David M. Lawson

PIPEFITTERS LOCAL 636 FRINGE
BENEFITS FUND,

        Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE DECISION OF PLAN ADMINISTRATOR, GRANTING IN PART DEFENDANT'S MOTION TO AFFIRM DECISION OF PLAN ADMINISTRATOR, AND DENYING DEFENDANT'S REQUEST FOR ATTORNEY'S FEES

Plaintiff Thelester Mahone filed this action under section 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(1)(B), alleging that the defendant wrongfully denied him deferred vesting pension benefits. The language of pension plan requires an applicant for such benefits to have accumulated a certain number of years of service with contributing employers. The plan provides an alternate method of accumulating the required vested service by working for at least a year for a contributing employer and then performing additional work for a qualifying but non-contributing employer. The plaintiff's main challenge focuses on whether his employment with the Detroit Board of Education can be counted toward his vested service, either because that employer was a contributing employer or his work otherwise can be counted under the alternate language in the plan. The parties filed cross motions on the administrative record, and the Court heard oral argument on August 1, 2011. The Court concludes that the defendant's determination that the school board was not a contributing employer, and its interpretation of the plan language to mean that the plaintiff's employment with the board could not

be counted as vested service, were neither arbitrary nor capricious. The Court finds no merit in the plaintiff's additional arguments. Therefore, the Court will deny the plaintiff's motion to reverse the plan administrator's decision and grant the defendant's motion to affirm the decision. The Court will not award attorney's fees to the defendant.

I.

On January 10, 1978, the plaintiff, Thelester Mahone, joined Pipefitters Union Local 636 when he was 26 years old, and he remained an active member until 1996, when he was 45 years old. The union provided its members with pension benefits through the Pipefitters Local 636 Defined Benefit Pension Plan, in which the plaintiff participated. The plan is governed by ERISA. As a pipefitter, the Local directed Mahone to work for the Detroit Board of Education as a journeyman from January 10, 1978 through December 31, 1985. He says that he was not allowed to work for any other employers during that time. The plaintiff paid his union dues throughout that period and served as a union steward for several years.

Around 1987, the plaintiff began working for a different employer and remained there until 1996. The employer is not identified in the record, but the parties agree that the employer did contribute to the pension plan on the plaintiff's behalf. On December 31, 1996, the plaintiff ceased working in the trade and did not return to work with an employer covered by the Plan any time thereafter.

In 2007, several years after he stopped working for a union-related employer, the plaintiff contacted his union representative to obtain information about his retirement benefits and received a copy of his benefit calculation form. In early January 2009, when he was 57 years old, the plaintiff

applied for deferred vested pension benefits under the Plan. His request was denied initially and after his administrative appeal.

Under the terms of the Plan, a participant's eligibility for pension benefits is determined in part by the number of years the participant has worked for a "contributing employer." A contributing employer is one who employs workers within the jurisdiction of the union and who pays fringe benefits for those workers to the plan under a written agreement with the union. AR, Ex. A, 2008 Pension Plan, Art. 1. A participant is entitled to a normal pension if he stops working for a contributing employer after reaching age 65 and has then accumulated at least five years of vested service. AR, Ex. A, 2008 Pension Plan, Art. 4, § 4.1. However, the plan version in effect when the plaintiff last worked for a contributing employer also provided for a deferred vested pension benefit for "[a] Member who, at the time he incurs a Break in Continuous Service, has at least ten (10) years of Vesting Service." AR, Ex. D, 1993 Pension Plan, Art. 4, § 4.6. The plan since has been amended to reduce the vesting period to five years, but, as the parties agree, the plaintiff cannot take advantage of that amendment because the plaintiff did not perform any qualifying work under the plan after January 1, 1998.

The dispute in this case centers on the calculation of the number of years of Vesting Service accumulated by plaintiff Mahone at the time he incurred a break in service. The plan defines "Vesting Service" as "the time . . . for which the Employee is given credit for the purpose of determining his eligibility for a Normal and a Deferred Vested Pension Benefit." AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.2; AR, Ex. D, 1993 Pension Plan, Art. 2, § 2.2. The plan includes a schedule for calculating Vesting Service, but for this case it is sufficient to state that a participant earns one year of Vesting Service for each year after 1992 in which he worked at least 1,000 hours

for a contributing employer. *Ibid.* For work performed before January 1, 1993, the plan states that a participant is credited with Vesting Service acquired under the Pipefitters' Local No. 636 Pension Plan in effect before then. AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.1(a). Vesting service also can be earned for work performed for a non-contributing employer under certain conditions:

> After an Employee has acquired one or more years of Credited Service, he shall receive Vesting Service for each year or part year of service, in accordance with the schedule above, . . . performed for an Employer which is party to a Collective Bargaining Agreement with Pipefitters' Local No. 636, even though the Employer was not obligated by the Collective Bargaining Agreement to make contributions on the Employee to the Pipefitters' Local No. 636 Defined Benefit Pension Plan or its predecessor, Plumbers Local No. 98 and Pipefitters' Local No. 636 Pension Fund, [in effect prior to January 1, 1993] . . . . This provision shall apply to Hours of Service performed while the Employee was a participant of Plumbers Local No. 98 and Pipefitters' Local No. 636 Pension Fund (P&PPF) before January 1, 1993 . . . .

AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.2.

Vesting Service also can be lost if, after January 1, 1993, "an Employee . . . incurs a Break in Continuous Service before he has met the requirements for pension benefits or for a deferred vested pension . . . ." AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.3. The plan defines "Break in Continuous Service" as "the interruption of credited service which occurs with respect to any Participant who, after December 31, 1992, fails to earn at least 1/4 year of Credited Service during two consecutive Plan Years." AR, Ex. A, 2008 Pension Plan, Art. 1. Forfeited Vesting Service can be restored if the participant resumes work for a contributing employer within a period of time generally measured by the number of years of Vesting Service previously accumulated. *Ibid.* In the plaintiff's case, that amounted to 8-1/2 years.

At some point in early January 2009, the plaintiff contacted the defendant and requested additional information about his available benefits. On January 8, 2009, the defendant sent the plaintiff a letter construing the request as an application for benefits. The letter explained that the

plaintiff had accrued 8.25 years of credited service and 8.5 years of vesting service by 1996, but since the plan required 10 years of credited service in order for the plaintiff's benefits to become vested (unless he had worked for a covered employer after January 1, 1998), he was not eligible for benefits. As an alternative basis for denial, the defendant explained that the plaintiff had forfeited this vested time under the plan because he did not perform covered work between January 1, 1997 and June 30, 2005. The letter did not discuss the plaintiff's employment with the Detroit Board of Education. It concluded by stating that "[y]ou may consider this a denial of a request to receive a pension benefit" and informing the plaintiff of his right to appeal. AR, Ex. F, Jan. 8, 2009 letter.

The plaintiff appealed the decision through counsel on February 3, 2009 and challenged the defendant's refusal to credit his work time with the Detroit Board of Education when calculating his years of Vested Service. He included a benefit calculation form he had received in 2007, which stated that his projected monthly retirement benefit he would "receive at the time of [his] retirement at Normal Retirement Age" on March 1, 2011 totaled $577.50, based on 8.25 credit years and 8.5 vesting years. He also attached the Union's October 1984 seniority list as evidence of the plaintiff's tenure. He did not present any evidence that the Detroit Board of Education was a contributing employer. On March 7, 2009, the plaintiff sent the defendant a second letter and attached his application for retirement benefits as of February 4, 2009, his 58th birthday.

The defendant denied the appeal at a Board of Trustees Meeting on March 13, 2009. The defendant determined that the plaintiff had accrued 8.5 years of vesting service between 1987 and 1996, but he had stopped working in 1996 and forfeited his vested time by failing to accrue additional vested time before 2005. The defendant concluded that the plaintiff had not accumulated the 10 years of vested service required to become eligible for deferred vesting pension benefits. The

defendant also found that the plaintiff's work for the Detroit Board of Education did not entitle him to Vesting Service because the Board was not a contributing employer, his work there did not occur after he had accumulated a year of Credited Service with a contributing employer, and he was not an "apprentice" while working there so section 2.1(f) of the plan did not apply to him. (Section 2.1(f) states: "Hours of Service earned while working for the Detroit Board of Education while the participant is an apprentice shall be used for purposes for computing Credited Service for such years." AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.1(f).

The defendant notified the plaintiff of the appeal denial in a letter dated March 20, 2009. The plaintiff filed a complaint in this Court on September 14, 2009. On November 13, 2009, the defendant filed a motion to dismiss the complaint. The Court conditionally granted that motion on May 12, 2010 and dismissed the complaint without prejudice. The Court also allowed the plaintiff to file an amended complaint by May 31, 2010 or face a dismissal with prejudice. The plaintiff filed his amended complaint on May 28, 2010, alleging a single count under ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Thereafter, the parties filed their cross motions on the administrative record.

II.

The plaintiff presents four arguments: (1) the defendant's determination that the Detroit Board of Education was not a contributing employer is not supported by sufficient evidence and is arbitrary and capricious; (2) the defendant incorrectly interpreted plan section 2.2 when it determined that the plaintiff must have worked for a contributing employer *before* working for the Detroit Board of Education in order to earn Vested Service for his time with that employer; (3) the plaintiff is entitled to an evidentiary hearing on the issue of whether the defendant furnished the

complete administrative record when previous versions of the plan were not included; and (4) the plaintiff was a victim of discrimination when the Union Local assigned him to work for the Detroit Board of Education instead of a contributing employer.

The defendant contends that its interpretation of plan language was reasonable, and its determination that the plaintiff is not entitled to benefits under the plan is correct.

The parties agree that the applicable standard of review is the arbitrary and capricious standard of review. "The arbitrary or capricious standard is the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (internal quotation marks and citations omitted). An administrator's decision will be upheld under the arbitrary and capricious standard "if it is the result of a deliberate, principled reasoning process, and is rational in light of the plan's provisions." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 165 (6th Cir. 2007) (internal quotation marks and citations omitted). A decision reviewed under this standard must be upheld if it is supported by "substantial evidence." *Baker v. United Mine Workers of Am. Health & Ret. Funds*, 929 F.2d 1140, 1144 (6th Cir. 1991). Substantial evidence to support an administrator's decision exists if the evidence is "rational in light of the plan's provisions." *See Smith v. Ameritech*, 129 F.3d 857, 863 (6th Cir. 1997) (internal quotation marks and citation omitted).

There is no dispute that without credit for the time worked for the Detroit Board of Education, the plaintiff would not have qualified for a deferred vesting pension at the time he ceased his union-related work in 1997. He needed ten years for his deferred pension rights to vest, and his work with the subsequent contributing employer amounted only to 8.5 years, which he earned

between 1987 and 1996. The plaintiff worked for the Board of Education between 1978 and 1985, and if his earning 9.25 years were added to and counted as vesting credit, he would satisfy comfortably the required minimum.

The plaintiff contends that the defendant's refusal to credit his Board of Education time was arbitrary and capricious for three reasons: (1) there is no proof in the record that the Board is not a contributing employer; (2) the defendant's interpretation of plan section 2.2 is faulty because there is no requirement that the plaintiff must have worked for a contributing employer *before* working for the Detroit Board of Education in order to earn Vested Service for his time with the Board; and (3) because previous versions of the Pipefitters' Local No. 636 Pension Plan in effect before January 1, 1993 are not in the record, there is nothing to say that the plaintiff's work for the Board cannot be counted as Vesting Service.

With respect to his first argument, the plaintiff is correct on one point: there is no evidence in the administrative record one way or the other whether the Detroit Board of Education contributed any pension payments for the plaintiff during his employment there. The plaintiff reasons that without such evidence, the defendant's determination is arbitrary and capricious.

It is true that a plan administrator's decision must be based on "substantial evidence." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 302 (6th Cir. 2009) (quoting *DeLisle v. Sun Life Assur. Co. of Can.*, 558 F.3d 440, 444 (6th Cir. 2009)). However, the administrator's decision in this case was that the plaintiff failed to establish a right to benefits. It is the person claiming benefits that bears the burden to prove that he is entitled to those benefits under the plan. *See Ruttenberg v. U.S. Life Ins. Co. in City of New York*, 413 F.3d 652, 663 (7th Cir. 2005) (holding that ERISA plaintiff seeking to enforce benefits under the policy bears burden of proving his entitlement to contract

-8-

benefits); *Seiser v. UNUM Provident Corp.*, 135 F. App'x. 794, 797 (6th Cir. Apr. 22, 2005) (holding that plaintiff bore burden of proving eligibility for disability benefits under terms of policy); *Abnathya v. Hoffmann-La Roche, Inc.*, 2 F.3d 40, 46 (3d Cir. 1993) (holding that plaintiff bore burden under plan to submit medical evidence to support eligibility for benefits); *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 985-86 (6th Cir. 1991) (rejecting argument that once disability benefits are conferred, burden of proof lies with the insurance company to prove that employee can return to former employment). Where the plan administrator denies benefits based on the lack of evidence, it is incumbent on the claimant to point to evidence in the record that contradicts such a finding and demonstrates that the decision, therefore, is arbitrary and capricious. *See Anderson v. Cytec Indus., Inc.*, 619 F.3d 505, 512-13 (5th Cir. 2010) (holding that in a benefits denial action under 29 U.S.C. § 1132(a)(1)(B), the plaintiff "bore 'the initial burden of demonstrating . . . that [the] denial of benefits under an ERISA plan [was] arbitrary and capricious'" (quoting *Perdue v. Burger King Corp.*, 7 F.3d 1251, 1254 n.9 (5th Cir. 1993))).

The plaintiff has not identified any evidence in the administrative record that suggests that the Detroit Board of Education contributed fringe benefits on the plaintiff's behalf or otherwise qualified as a contributing employer within the meaning of the plan. The defendant's conclusion that the Board was not a contributing employer was not arbitrary or capricious.

In his second argument, the plaintiff contends that the defendant misinterpreted plan section 2.2 when it found that his work for the Detroit Board of Education would not count for vesting service because it preceded work for a contributing employer. As mentioned above, section 2.2 provides another way of accumulating vesting service for work performed for an employer that signed a collective bargaining agreement with Local 636, even though that employer was not obliged

to pay fringe benefits to Local 636's pension plan. The critical language is found in the first clause of that provision: "After an Employee has acquired one or more years of Credited Service . . . ." AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.2. The plaintiff maintains that the language creates a condition precedent, and once a worker has acquired a year of credited service, other work described in that section then can be counted toward vesting service regardless of when that work was performed. The defendant views the language as creating a temporal requirement, so that worked performed *before* the employee accumulates credited service does not count. The defendant reads "after" to mean "coming later in time."

The two competing interpretations are both plausible, which means that ambiguity can be found in the plan language. But that ambiguity does not spell victory for the plaintiff. The arbitrary and capricious standard of review requires the Court to defer to reasonable interpretations of plan language by the plan administrator. "Under the arbitrary-and-capricious standard, we must uphold the administrator's decision 'if [the administrator's] interpretation of the Plan's provisions is "reasonable."'" *Kovach v. Zurich American Ins. Co.*, 587 F.3d 323, 328 (6th Cir. 2009) (quoting *Morrison v. Marsh & McLennan Cos.*, 439 F.3d 295, 300 (6th Cir. 2006)).

The plaintiff concedes that he worked for a non-contributing employer first and had not accumulated a year of credited service at the time. Under section 2.2 as the defendant interpreted it, the plaintiff cannot count that time as vesting service. The defendant's interpretation follows at least one accepted meaning of the language in the plan and is reasonable. The defendant's conclusion that the plaintiff cannot use that section to count his work for the school board as vesting service is neither arbitrary nor capricious.

Moreover, the plaintiff concedes that he did not work for a contributing employer in the eight-and-a-half years immediately following his break in continuous services. Therefore, he forfeited the accumulated years under the plan. The defendant presented the forfeiture ground in its initial denial of benefits, and the plaintiff's argument that the issue was not raised until the parties were before this Court is not borne out by the record.

The plaintiff reasons that he is entitled to an evidentiary hearing because, he contends, the administrative record is incomplete. The missing item, according to the plaintiff, is a previous version of Local 636's pension plan that is referenced in Article 2, section 2.1(a) of both the 1993 and current (2008) versions of the plan. That section states:

> Every participant of the Plan shall be credited with the credited and vesting service the participant acquired under P&PPF [Plumbers Local No. 98 and Pipefitters' Local No. 636 Pension Plan in effect before January 1, 1993] so that, commencing January 1, 1993, the credited and vesting service of every participant will be comprised of the participant's credited and vesting service under P&PPF plus all credited and vesting service acquired under the 636 DBPP [Pipefitters' Local No. 636 Defined Benefit Pension Plan].

AR, Ex. A, 2008 Pension Plan, Art. 2, § 2.1(a).

The plaintiff does not contend that he actually accumulated vesting service under those old plans; nor does he say that he was prevented from offering evidence at the administrative hearings on that point. He does not come forward with annual statements showing plan contributions made on his behalf. He merely says that the language of those old plans may show that he qualifies for vesting service from former employment.

Under well-established Sixth Circuit law, when reviewing a pension plan administrator's decision to deny benefits, the Court may consider only that evidence presented to the plan administrator at the time he made his decision. *Smith*, 129 F.3d at 863. The Court's review is

-11-

limited to the administrative record. *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615 (6th Cir. 1998). The Court "may consider evidence outside of the administrative record [] if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Wilkins*, 150 F.3d at 619 (Gilman, Ryan, JJ., concurring).

Certainly, a plan administrator's refusal to consider evidence favorable to the claimant amounts to a denial of due process. *Killian v. Healthsource Provident Adm'rs, Inc.*, 152 F.3d 514, 522 (6th Cir. 1998). But the plaintiff does not suggest that such a thing happened here. In fact, the plaintiff has not offered anything but his speculation that past plan documents might help his case. For the plaintiff to seek evidence beyond the administrative record, he must make a "threshold evidentiary showing" of the alleged procedural deficiencies and may not rely on mere speculation. *Bennett v. UNUM Life Ins. Co. of Am.*, 321 F. Supp. 2d 925, 937 (E.D. Tenn. 2004). Because the plaintiff has not made such a showing here, he is not entitled to an evidentiary hearing.

Finally, the plaintiff asks the Court to prevent the defendant from denying him vesting time during the period he worked for the Detroit Board of Education because the Union engaged in the discriminatory practice of staffing that employer predominantly with new African American employees, which precluded them from obtaining benefits for their work under the defendant's interpretation of the current pension plan.

There is authority supporting the proposition that a court may consider equitable arguments in a denial of benefits claim under ERISA section 502(a)(1)(B). *See Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 440-41 (6th Cir. 2010). However, the plaintiff's contention here is misdirected. If a discriminatory practice existed at all, the perpetrator would have been Local 636,

not the present defendant. The plaintiff has presented no authority — and the Court has found none — that would allow the Court to reinterpret the provisions of the plan based on the actions of a third-party. Nor has the plaintiff provided any evidence suggesting that the present defendant may serve as a proxy for the Local 636 or that the defendant itself was involved in the work assignment decisions. To the extent that the plaintiff challenges Local 636's staffing procedures, the appropriate vehicle for his suit would have been a race discrimination claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2.

One last matter is the defendant's request for attorney's fees under 29 U.S.C. § 1132(g)(1). That provision states: "In any action under this subchapter (other than an action described in paragraph (2)) by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." "Courts in this Circuit consider five factors in deciding ERISA attorneys' fees questions:

> '(1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorneys' fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006) (quoting *Sec'y of Dep't of Labor v. King*, 775 F.2d 666, 669 (6th Cir. 1985)).

The Court finds that the plaintiff had a legitimate dispute over his entitlement to deferred vesting pension benefits under the plan. He did not bring this action in bad faith. The defendant has offered no evidence in the record regarding the plaintiff's ability to satisfy an attorney's fee award. The deterrent effect of a fee award would contravene public policy, which favors plan participants bringing legitimate disputes over the interpretation of pension plan language to the courts for

resolution. The party requesting fees — the plan — certainly is attempting to confer a common benefit on plan participants by deferring costs associated with litigation. However, the dispute in this case was a legitimate one, and although the Court finds against the plaintiff on the merits, the balance of the factors cuts against awarding fees.

### III.

The Court finds that the defendant's decision denying the plaintiff deferred vesting pension benefits was not arbitrary or capricious. The plaintiff has not established a right to pension benefits under the plan. The Court also finds that the applicable factors weigh against awarding attorney's fees to the defendant.

Accordingly, it is **ORDERED** that the plaintiff's motion to reverse the decision of the plan administrator [dkt. #25] is **DENIED**.

It is further **ORDERED** that the defendant's motion to affirm the decision of the plan administrator [dkt. #26] is **GRANTED IN PART**.

It is further **ORDERED** that the decision of the plan administrator denying deferred vesting pension benefits is **AFFIRMED** and the defendant's request for attorney's fees is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 8, 2011

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 8, 2011.

                                    s/Deborah R. Tofil
                                    DEBORAH R. TOFIL